**ESTATE of Margaret Jane MORRIS, Deceased.**

No. 8959.

Court of Civil Appeals of Texas, Amarillo.

Jan. 31, 1979.

Rehearing Denied Feb. 26, 1979.

Kolander & Hamilton (R. C. Hamilton), Amarillo, for appellee.

Underwood, Wilson, Sutton, Berry, Stein & Johnson (John Mozola), Amarillo, for appellant.

REYNOLDS, Justice.

The probate of an earlier will was set aside upon proof of a later, valid will made more than two years afterwards and against the contention that the application to probate the last will is a will contest barred by the two-year statute of limitations, but probate of the last will was denied after the jury found an agreement between the principal beneficiaries not to offer the last will for probate. Absent a concurrent agreement for a division of the estate, the agreement not to offer the last will for probate is ineffective to prevent its probate. Affirmed in part; reversed and remanded in part.

Margaret Jane Morris died 1 April 1975. She had executed a 19 November 1965 will leaving her property to her surviving husband, Henry M. Morris, the named independent executor, who offered the will for probate. A 29 April 1975 order entered in Cause No. 13,132 on the docket of the County Court of Potter County admitted the will to probate and decreed that Henry M. Morris receive letters testamentary.

Two years and five months later on 16 September 1977, Becky Jean Woodward Whitaker, the daughter of Mr. and Mrs. Morris, filed an application for probate of a will not produced in court, seeking the probate of a 22 March 1968 will of Margaret Jane Morris and the issuance to her of letters testamentary. By the provisions of the 1968 document, all previous wills were revoked; Henry M. Morris was bequeathed one dollar and the remainder of the decedent's estate was devised and bequeathed to her two surviving children, Henry Lee Morris and Becky Jean Woodward, share and share alike; and Becky Jean Woodward was appointed independent executor without bond. In her application, Becky Jean alleged that the 22 March 1968 will was destroyed after the decedent's funeral by Henry Lee, who stated that the will would upset their father. She further alleged that the 1968 will specifically revoked the 1965 will, the probate of which should be set aside and held for naught.

Henry M. Morris opposed the probate of the 1968 will. He alleged, *inter alia,* that Becky Jean is foreclosed from making the present application by the Tex.Prob.Code Ann. § 93 (Vernon 1956)[1] two year limitation period for the contest of the probated 1965 will, is estopped by her knowledge and actions from asserting the 1965 will is not the last will and from offering the 1968 will for probate, and is bound by an agreement with her brother, to which Henry M. Morris is a third party beneficiary, to destroy the 1968 will.

Following a jury trial, the court submitted a charge to which no objection was made. Responsive to the special issues submitted, the jury found that Becky Jean and Henry Lee agreed not to offer for probate the 1968 will, and that the agreement was made for the benefit of their father, Henry M. Morris. The jury failed to find that Becky Jean knew her father was relying on the belief that the 1965 will was the last will of the decedent, or that Becky Jean unreasonably delayed in offering the 1968 will for probate, or that Becky Jean waived her right to probate the 1968 will. Accepting the verdict, the trial court found that, as a matter of law, the 1968 will has been proved in a manner required by the Probate Court, and that it revoked all prior wills.

The court then rendered judgment setting aside the probate of the 1965 will, denying the probate of the 1968 will and the grant of letters testamentary to Becky Jean, and decreeing that the estate of Margaret Jane Morris, deceased, pass according to the laws of intestate succession. Both Henry M. Morris and Becky Jean have appealed.

At the outset, the nature of Becky Jean's action must be considered. Her application

1. Sections subsequently cited refer to the sections of the Texas Probate Code.

was for the probate of the decedent's later 1968 will which, because of its destruction, could not be produced in court, a procedure authorized by Section 85. The filing was within four years after the testatrix's death, which is the usual period of time permitted for the filing of an application for the probate of a will. Section 73. Section 83(b) recognizes the situation where, after a will has been admitted to probate, an application may be made for the probate of another will of the decedent, and provides that the court shall determine the matters of probate or intestacy. However, Henry M. Morris contends that Becky Jean's action is a contest of the validity of the 1965 will and, being filed more than two years after the 1965 will was admitted to probate, is barred by the two-year statute of limitation imposed by Section 93 on will contests. We are not persuaded to that view.

With some exceptions not material here, Section 93 limits the period for contesting the validity of a probated will to two years after the will has been admitted to probate. In the classical sense, a will contest is a direct attack upon a decree admitting a will to probate. *A & M College of Texas v. Guinn*, 280 S.W.2d 373, 377 (Tex.Civ.App.—Austin 1955, writ ref'd n. r. e.). A direct attack is an attempt to change the decree in a proceeding brought for that specific purpose. *Ranger Ins. Co. v. Rogers*, 530 S.W.2d 162, 167 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.).

But here, although Becky Jean alleges the probate of the 1965 will should be set aside because the 1965 will was revoked by the later 1968 will she offers for probate, the specific purpose of her application is to secure the probate of the 1968 will. Thus, her action does not meet the standard test of a direct attack upon the decree admitting the 1965 will to probate. Moreover, it has been authoritatively pronounced that the admission of a prior will to probate interposes no obstacle whatever to the timely probate of a later, valid will, which revokes all prior wills, as the last will of the testator. It is not necessary that a separate contest be first instituted to revoke the earlier will admitted to probate, because the probate of the last will, revoking all others, has the incidental effect of revoking the former probate, whether there is any pleading to that effect or not. *Vance v. Upson*, 64 Tex. 266, 268–71 (1885).

The *Vance* pronouncements were made, as Henry M. Morris stresses, with reference to an application to probate a later will filed within ten months of the date the earlier will had been admitted to probate, and the question of a limitation period for a contest was not addressed. Still, the *Vance* pronouncements have been accepted for the principle that the timely probate of the last will is not a contest within the purview of, nor governed by, Section 93, although more than two years have elapsed since the probate of an earlier will. Comment, *Procedural Content of Will Contests*, 14 Baylor L.Rev. 401, 407–08 (1962); *Bradford v. Bradford*, 377 S.W.2d 747, 748 (Tex.Civ.App. —Texarkana 1964, writ ref'd n. r. e.); Note, *Will Contest—The Probate of a Subsequent Will is Not a Contest*, 16 Baylor L.Rev. 293 (1964). Beyond that, to say that the interplay of Sections 73, 83(b) and 93 converts any timely application for the probate of a later will into a contest of the validity of any earlier will admitted to probate more than two years previously and, thereby, bars probate of the last will, would, in that instance, destroy the right and power specifically given one to make disposition of property by a valid last will and testament. Sections 57 and 58.

Because a testatrix has the legal right to devise her property as she sees fit and to prescribe terms upon which her bounty should be enjoyed, *Van Hoose v. Moore*, 441 S.W.2d 597, 613 (Tex.Civ.App.— Amarillo 1969, writ ref'd n. r. e.), the intent of the Probate Code is more accurately reflected by a determination, and we hold, that a timely application for probate of the testator's last will is neither a contest of the validity nor barred by the probate of an earlier will. If the probate of the last will is to be defeated, it must be for some other reason.

One of the reasons given by Henry M. Morris to defeat the probate of the 1968 will is that, contrary to the court's finding that the will was proved as a matter of law, the evidence did no more than raise fact issues of the execution and contents of the will. The evidence must be considered in connection with the provisions contained in Sections 84(b)(1), 85 and 88(a) and (b) which, taken together, prescribe the elements that must be proved, and the sources and standards of proof, for the probate of a written will which cannot be produced in court.

Mr. Jerry Kolander, the attorney who prepared the 1968 will and who was one of the subscribing witnesses, identified a conformed copy of the original 1968 will which was taken from his files and received in evidence. He testified to the competency of Margaret Jane Morris to make a will, the contents of the will, its execution under the formalities to make it a valid will, and to its non-revocation. The cross-examination of Mr. Kolander with respect to these matters was limited to his independent recollection of "what the will did," to which Mr. Kolander replied, "In general terms I could remember that she excluded her husband and left it to her children."

Mr. Kolander's secretary, the notary who took the acknowledgments of the testatrix and the subscribing witnesses to self-prove the will and conformed the copy introduced in evidence, corroborated Mr. Kolander's testimony of competency and execution. She was not cross-examined with respect to either of these matters.

Becky Jean said that she had possession of the 1968 will for seven years before her mother's death. She testified that the conformed copy identified by Mr. Kolander was a true and correct copy of the original will which Henry Lee read and burned after their mother's funeral. Her testimony of the contents of the will and its destruction was not subjected to cross-examination. It was the testimony of Henry Lee that Becky Jean gave him the will, explained its contents which he did not read, and that he, with Becky Jean's total agreement that the

will would be upsetting to their father, burned the will, which "I feel very sure . . . was my mother's will."

■ Henry M. Morris does not challenge the accuracy of any part of this evidence other than by his contention that Mr. Kolander, an associate of Becky Jean's attorney of record, and his secretary, are, in the eyes of the law, interested parties with Becky Jean, and their testimony merely raises fact issues. Generally, evidence given by an interested party raises an issue of credibility upon which the jury must pass; however, the rule has its exception. If the testimony of the witness is clear, positive and uncontradicted either by other witnesses or circumstances, including lack of cross-examination, it may be that the jury should not be allowed to speculate as to the veracity of the witness. *Collora v. Navarro,* 574 S.W.2d 65, 68–70 (Tex.1978).

■ Our review of the evidence reveals that the cause of non-production of the 1968 will is undisputed. A conformed copy of the will is in evidence without objection. The verity of the sworn testimony given by Mr. Kolander and his secretary as to the testatrix's competency and the execution of the will was in no way challenged, either through cross-examination or by other testimony. The facts establishing the elements prerequisite for probate stand undisputed, unchallenged and uncontroverted. In this circumstance, there were no disputed facts to resolve, *Rolfe v. Swearingen,* 241 S.W.2d 236, 239–40 (Tex.Civ.App.—San Antonio 1951, writ ref'd n. r. e.), and no alternative to admitting the 1968 will to probate, *Nesbett v. Nesbett,* 428 S.W.2d 663, 664 (Tex. 1968), absent some other rational ground.

■ Another reason advanced by Henry M. Morris to defeat the probate of the 1968 will is estoppel. He pleaded that Becky Jean, with knowledge of the existence of the 1968 will at the time the 1965 will was probated, allowed him to rely to his detriment on the fact that the 1965 will was the last will, and is thereby estopped from asserting that the 1965 will is not the last will of Margaret Jane Morris.

**754**

The species of estoppel indicated by the pleading is equitable estoppel or estoppel in pais. To show its applicability here, Henry M. Morris had the burden to plead and prove the facts that Becky Jean (1) made a false representation to him or concealed material facts from him, (2) with knowledge, actual or constructive, of those facts, (3) while he was without knowledge, or the means of knowledge, of those facts, (4) with the intention that it should be acted on, and (5) that he relied on or acted on it to his prejudice. *See Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 932 (1952).

The testimony bearing an estoppel is summarized. Becky Jean testified that it was her intentions and desires to have the 1968 will probated; she never agreed with Henry Lee to destroy it, and she could think of nothing to do to keep him from destroying it; Henry Lee told her "to keep my mouth shut and not to say anything to anybody about it;" she searched for, but could not find, a copy of the destroyed will; she had no experience with legal matters and did not know she could apply for a lost will until her uncle found a copy in September 1977; and she never gave up her rights under the last will or elected to be bound by the 1965 will. She acknowledged that she knew of the 1965 will both before and after she knew Henry M. Morris was going to probate it; she did not tell her father there was a later will which left him nothing; she did not object to his sale of the home; she received some items of property out of her mother's estate; and, after her mother's death, checks drawn on her father's account were paid to or for her benefit.

Henry M. Morris was told about the 1968 will by Henry Lee in September of 1977. Before that time, Henry M. Morris testified, he had never heard of the 1968 will; the majority of the items inventoried in the estate of Margaret Jane Morris had been sold or changed in form; and that since Mrs. Morris's death, he had given to or paid for Becky Jean over $8,500 in cash.

■ Henry M. Morris argues that his foregoing testimony and Becky Jean's acknowledgments conclusively establish estoppel. The isolated testimony to which he refers comes from interested parties and is not without contradiction; but, even given its verity without regard to the other evidence, it fails to establish all of the essential elements of estoppel as a matter of law. For example, the testimony on which Henry M. Morris relies is mute with respect to whether Becky Jean intended that her father should act upon her conduct. A consideration of all of the evidence bearing on estoppel shows that it does no more than create fact issues concerning the elements of estoppel.

Given the pleadings and evidence, the court submitted, without objection to the manner of submission or request for other issues, three issues referable to estoppel. The issues, and the jury's response thereto, are:

### SPECIAL ISSUE 2

2(a) Do you find that Becky Jean Woodward knew that her father, Henry M. Morris, was relying on the belief that the will of Margaret Jane Morris which he offered for probate was the last will and testament of Margaret Jane Morris?

Answer "yes" or "no".

ANSWER: NO

If, and only if, you have answered Special Issue 2(a) "yes", then, and only then, answer Special Issue 2(b).

2(b) Do you find that Henry M. Morris had neither the knowledge, nor reasonable means of obtaining the knowledge, that the will of Margaret Jane Morris which he offered for probate was not the last will of Margaret Jane Morris?

Answer "yes" or "no".

ANSWER: _____

If, and only if, you have answered Special Issue 2(b) "yes", then, and only then, answer Special Issue 2(c).

2(c) Do you find that Henry M. Morris relied to his detriment on the belief that the will of Margaret Jane Morris which he offered for probate was the last will of Margaret Jane Morris?

Answer "yes" or "no".

ANSWER: _____

Henry M. Morris contends that the jury's negative answer to special issue no. 2(a) is against the great weight and preponderance of the evidence. Even granting the correctness of the contention, it does not vitiate the portion of the judgment which negates the defense of estoppel.

 To estop Becky Jean from asserting that the 1965 will is not the last will, it was incumbent upon Henry M. Morris to obtain a favorable finding on each of the elements essential to establish estoppel. *See Barfield v. Howard M. Smith Company of Amarillo,* 426 S.W.2d 834, 838 (Tex.1968). While the court did submit three issues, two of which were conditionally submitted, the court did not submit all of the factual issues essential to the establishment of the defense of estoppel. Henry M. Morris did not request the submission of the omitted issues or object to the conditional submission, and Becky Jean made no objection. Thus, the parties acquiesced in the manner of submission, waiving a jury finding on special issues 2(b) and 2(c) if the jury returned, as it did, a negative answer to issue no. 2(a), as well as on the omitted issues. The jury, obeying the court's instruction, did not answer the issues conditionally submitted. The consequence is that there is a deemed finding by the court from the conflicting evidence on one or more of the jury waived issues in support of the court's judgment that there is no estoppel. Rule 279, Texas Rules of Civil Procedure; *Bay Petroleum Corporation v. Crumpler,* 372 S.W.2d 318, 320 (Tex.1963); *Little Rock Furniture Mfg. Co. v. Dunn,* 148 Tex. 197, 222 S.W.2d 985, 990–91 (1949); *Bankers Standard Life Ins. Co. v. Atwood,* 205 S.W.2d 74, 77 (Tex.Civ. App.—Austin 1947, no writ).

The remaining reason urged by Henry M. Morris to defeat the effect of the 1968 will is the jury-found agreement that Becky Jean and Henry Lee made for the benefit of their father not to offer the 1968 will for probate. It seems apparent that these findings are the basis of the portion of the judgment which denies probate of the 1968 will and decrees that the decedent's estate shall pass according to the laws of intestate succession.

Henry M. Morris contends that the agreement not to offer the 1968 will for probate, coupled with the knowledge by Becky Jean and Henry Lee of the existence of the 1965 will, is sufficient in law to deny probate to the 1968 will and cause the decedent's estate to pass by the 1965 will. Becky Jean argues, without challenging the jury findings, that the agreement itself is insufficient as a matter of law to prevent probate of the 1968 will because there is no accompanying agreement to dispose of the estate. To this extent, both parties attack the portion of the judgment decreeing that the decedent's estate shall pass according to the laws of intestacy.

 More than eighty years ago it was determined that the beneficiaries of a will may agree among themselves as to the distribution of the property devised and bequeathed to them, and the agreement may be effected by an agreement not to probate the will. *Stringfellow v. Early,* 15 Tex.Civ. App. 597, 40 S.W. 871, 874 (1897, no writ). This is the family settlement doctrine, supported by the general principle that the property belongs to the beneficiaries under the will and since they may, by transfers made immediately after the distribution, divide the property as they wish, there is no reason why they may not divide it by agreement before they receive it in the regular course of judicial administration of the estate. *Fore v. McFadden,* 276 S.W. 327, 329 (Tex.Civ.App.—Texarkana 1925, writ dism'd). For this reason and because such agreements tend to put an end to family controversies by way of compromise, family settlement agreements are favored in law. *Wedegartner v. Reichert,* 218 S.W.2d 304, 309 (Tex.Civ.App.—Waco 1948, writ ref'd n. r. e.). And it remains our law that a family settlement in which all of the heirs and beneficiaries agree that a purported will shall not be probated is valid and enforce-

able. *Salmon v. Salmon,* 395 S.W.2d 29, 32 (Tex.1965).[2]

Those cases, and their progeny, were concerned with an agreement not to probate a will coupled with an express agreement for the disposition of the estate. Here, however, there was no agreement for any disposition of the estate. Becky Jean denied any agreement at all; and Henry Lee testified, "We did not agree as to where the estate was going. We agreed as to what to do with the will." The destruction of the will, Henry Lee stated, was to prevent "shock" to and the "upsetting" of their father.

None of the cases cited by the parties or discovered in our independent research speak only to an agreement not to probate a will. The initial inquiry, then, is whether the agreement not to offer the 1968 will for probate, standing alone, is effective to bar probate.

 Every person who meets the requirements prescribed in Section 57 of the Probate Code "shall have the right and power to make a last will and testament, under the rules and limitations prescribed by law." When one meets the legal requirements, properly executes a will and provides for a disposition of his property not violative of public policy, his testamentary disposition should be respected. *Taylor v. Taylor,* 281 S.W.2d 232, 237 (Tex.Civ. App.—San Antonio 1955, writ ref'd n. r. e.). The right of testamentary disposition conferred by statute is as absolute as the right to convey property during life. *In re Caruthers' Estate,* 151 S.W.2d 946, 948 (Tex. Civ.App.—Amarillo 1941, writ dism'd judgmt cor.). Because one has the legal right to devise his property as he sees fit, *State v. Rubion,* 158 Tex. 43, 308 S.W.2d 4, 8 (1957), neither courts, juries, relatives nor friends of a testator may say how property should be passed by a will or rewrite a will because they do not like the distribution of

the property. *Farmer v. Dodson,* 326 S.W.2d 57, 61 (Tex.Civ.App.—Dallas 1959, no writ). Indeed, it has been held that any contract which would modify established law or deprive the courts of their power to protect private rights and liabilities is contrary to public policy and void. *Wampler v. Harrington,* 261 S.W.2d 883, 891 (Tex.Civ. App.—Texarkana 1953, writ ref'd n. r. e.). It logically follows that an agreement not to probate a will unaccompanied by any agreement for distribution of the property would, if upheld, destroy the statutory right of testamentary disposition and the right of the courts to enforce that right.

 Moreover, an agreement merely not to probate a will fails to invoke the principle which imparts vitality to the family settlement doctrine. The principle is that all of the decedent's heirs and beneficiaries have the right to contract with reference to the property in lieu of probating the will, *Stringfellow v. Early, supra,* 15 Tex.Civ. App. 597, 40 S.W. at 874; *Fore v. McFadden, supra,* at 329, *i. e.,* the right to make a family settlement. *Salmon v. Salmon, supra,* at 32. Consequently, the agreement found to exist here is ineffective to deny probate of the 1968 will unless it can be said, as Henry M. Morris argues, that there was an implied agreement for distribution of the estate.

 The argument for an implied agreement is premised on the fact that Becky Jean and Henry Lee had knowledge of an alternative vehicle—the 1965 will—for disposing of the property, and the conclusion that, even though they might not have known of the prior will's contents, they knew the property would pass under it if the 1968 will was destroyed. Yet, courts cannot make contracts for the parties; and, under the general law of contracts, before an implied agreement for disposition of the estate can be said to exist in the agreement

2. It is of no concern here that Henry M. Morris, one of the beneficiaries under the 1968 will, was not a party to the agreement found to exist between Becky Jean and Henry Lee. The parties do not raise the issue, and it is apparent

that by his reliance on the agreement, Henry M. Morris has affirmed and ratified it. *See Stringfellow v. Early,* 15 Tex.Civ.App. 597, 40 S.W. 871, 874 (1897, no writ).

not to offer the 1968 will for probate, it must appear that an agreement for the disposition of the property was so clearly within the contemplation of Becky Jean and Henry Lee that they deemed it unnecessary to express it and, therefore, omitted to do so, or that it is necessary to imply the agreement to effectuate the purpose of the agreement made. *See, e. g., Hilburn v. Herrin Transp. Co.,* 197 S.W.2d 149, 152 (Tex.Civ.App.—Dallas 1946, no writ). But, here, the undisputed evidence is that there was no agreement at all for the disposition of the estate, and that the destruction of the will was not for the purpose of making some other particular disposition of the estate. Under these circumstances, we are not authorized to write a contract for the parties contrary to their expressed intentions.

The validity of the 1968 will, which revoked all prior wills, having been established and no legal reason being shown why its admission to probate should be denied, the probate of the 1965 will must be set aside and the 1968 will admitted to probate. The 1968 will appoints Becky Jean the independent executrix without bond. She sought letters testamentary, but the court, pursuant to its judgment, did not determine her entitlement to letters; however, because the 1968 will is entitled to probate, the court must, under the provisions of Sections 78 and 88(c), determine whether she is entitled to receive letters testamentary. *See Reynolds v. Park,* 485 S.W.2d 807, 819 (Tex.Civ.App.—Amarillo 1972, writ ref'd n. r. e.). To this extent indicated, the points of error presented by the parties are granted; otherwise, the points and the cross-points are overruled.

Accordingly, the portion of the trial court's judgment setting aside the probate of the 1965 will is affirmed, and the remaining portions of the court's judgment are reversed. The cause is remanded to the trial court for the entry of judgment admit-

ting the 22 March 1968 will of Margaret Jane Morris to probate and providing for, after a hearing to determine, a representative of the estate.